IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LAWRENCE E. WILSON, JR.,

        Plaintiff,

  v.                                    Civil Action 2:15-cv-2673
                                       Judge George C. Smith
                                       Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Lawrence E. Wilson, Jr.'s motion for remand and his statement of errors under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's motion for remand be **DENIED**, his statement of errors be **OVERRULED**, and judgment be entered in favor of the Commissioner.

## I. BACKGROUND

**A.**     **Prior Proceedings**

Plaintiff filed his DIB application in January of 2011 (*see, e.g.*, Doc. 13 at Tr. 62, PAGEID #: 115), alleging a disability onset date of September 28, 2009 (*see id.* at Tr. 130, PAGEID #: 183). After initial denials of his claim (*see id.* at Tr. 86, 91, PAGEID #: 139, 144), Plaintiff appeared for an administrative hearing in November of 2012 (*see id.* at Tr. 29, PAGEID #: 83). Administrative Law Judge Terrence Hugar ("the ALJ") denied benefits on November 16, 2012. (*See id.* at Tr. 23, PAGEID #: 76). That became the Commissioner's final

decision when the Appeals Council denied review on June 1, 2015. (*See id.* at Tr. 1, PAGEID #: 54). Plaintiff now moves to remand based upon what he contends is new evidence. In the alternative, he argues that the ALJ erred in discounting his credibility. (*See* Doc. 13 (administrative record); Doc. 14 (motion to remand and statement of specific errors); Doc. 20 (memorandum in opposition); Doc. 23 (reply)).

**B.     Plaintiff's Testimony at the Administrative Hearing**

The ALJ heard this case on November 2, 2012. (*See* Doc. 13 at Tr. 29, PAGEID #: 82). According to Plaintiff's testimony, the accident that caused him to stop working occurred in June of 2009 when he was "doing industrial cleaning at Arsenal Metal." (*Id.* at Tr. 33, PAGEID #: 86; *see id.* at Tr. 46, PAGEID #: 99). For two long days, he used a high-pressure water gun to spray metal with chemicals without wearing a respirator or chemical suit. (*See id.* at Tr. 33, PAGEID #: 86). After the second day, his nose began to bleed and he began to cough up blood from the chemical vapor he had inhaled. (*See id.*). Plaintiff testified that, since that day, he has had difficulty breathing and has been unable to work. (*See id.* at Tr. 33–34, PAGEID #: 86–87). He also has trouble with weather changes, suffers from sinus headaches every day, and suffers from nosebleeds. (*See id.*). His headaches occasionally require him to go to the emergency room because his eyes swell shut and he becomes nauseous. (*See id.* at Tr. 37–38, PAGEID #: 90–91).

Plaintiff testified about how his health problems affect his everyday life. "[A]ny physical activity" "exasperate[s] [his] breathing." (*Id.* at Tr. 41, PAGEID #: 94). He coughs "[e]very day, all day long." (*Id.* at Tr. 39, PAGEID #: 92). He has trouble with cold temperatures and can no longer hunt and fish. (*See id.* at Tr. 43, PAGEID #: 96). And he "usually do[es]n't ride" his motorcycle "that much" because he can only "go out for an hour or so." (*Id.*). Given all of

2

this, Plaintiff testified that he stays inside and watches television for most of the day. (*See id.* at Tr. 38, PAGEID #: 91). Because of his breathing issues and other health problems, Plaintiff testified that he sleeps for only two or three hours a night. (*See id.* at Tr. 42, PAGEID #: 95).

Plaintiff also testified about his psychological issues. He sees a psychologist regularly for his depression and anxiety. (*See, e.g.*, *id.* at Tr. 39–40, PAGEID #: 92–93). He also has mood and temper issues. (*See id.* at Tr. 40, PAGEID #: 93 ("I lose my temper real easy because people get upset with me for coughing all the time and it seems like I annoy them and then it just – I don't know, it makes me mad because I can't control it.")). Plaintiff takes antidepressants, but they make him feel "like [he's] not in [his] head." (*Id.* at Tr. 50, PAGEID #: 104). For example, he testified that when his fiancé drives him he "look[s] up at a red light" and "just want[s] to keep going." (*Id.*). He also sometimes "walk[s] across the room and just totally forget[s] what [he's] doing." (*Id.*).

C.  **The ALJ's Decision**

The ALJ issued his decision on November 16, 2012. He determined Plaintiff had the following severe impairments: dermatitis, history of headaches, major depressive/mood disorder, and anxiety-related disorder. (Doc. 13 at Tr. 15, PAGEID #: 68). In assessing Plaintiff's residual functional capacity ("RFC"), he concluded Plaintiff could perform work at a light level of physical exertion. (*See id.* at Tr. 16, PAGEID #: 69). In making that assessment, he found Plaintiff's testimony about his symptoms only partially credible. (*See id.* at Tr. 17, PAGEID #: 70). The ALJ noted, among other things: Plaintiff's limited record of work (*see id.*); Plaintiff's inconsistent statements during psychological exams (*see id.* at Tr. 17–19, PAGEID #: 70–72); Plaintiff's multiple workers' compensation claims (*see id.* at Tr. 17–18, PAGEID #: 70–71); and Plaintiff's inconsistent statements about his ability to perform work (*see, e.g.*, *id.* at Tr. 19–20,

PAGEID #: 72–73).  The ALJ ultimately concluded that there were jobs in the national economy that Plaintiff could perform and therefore denied benefits.  (*See id.* at Tr. 21–23, PAGEID #: 74–76).

D.     **The Psychologist's Report**

On June 3, 2015, a few days after the appeals council denied review and more than two-and-a-half years after the ALJ issued his decision, Plaintiff submitted additional documentation to support his contention that he was "not able to engage in any competitive work."  (Doc. 14-1 at 1).  Relevant to this appeal, the documentation included a psychological assessment by Douglas Pawlarczyk, Ph.D., a worker's compensation examining psychologist for the state of Ohio who evaluated Plaintiff on April 1, 2015.  (*See* Doc. 14-1).  Dr. Pawlarczyk "got the impression" Plaintiff was "rather frustrated with his limitations."  (*Id.* at 11).  He noted Plaintiff's "mood did not seem to be characterized by any notable anxiety or irritability but primarily by some underlying depression."  (*Id.*; *see also id.* (noting that Plaintiff also "had at least some mild problems concentrating")).  Plaintiff told Dr. Pawlarczyk he was able to do his own grocery shopping and some cooking.  (*See id.* at 11–12).  He also told Dr. Pawlarczyk he could drive, and that he works on his lawn and garden when he does not have money to pay someone else to do it.  (*See id.* at 12).

Dr. Pawlarczyk opined that Plaintiff's limitations likely would mean he would have difficulty dealing with mild stress (*see id.*) and that "he could not engage in any competitive work activity" (*id.* at 13).  He also "would be unable to relate appropriately to co-workers, supervisors and the general public."  (*Id.*).  Finally, Dr. Pawlarczyk opined that Plaintiff had "reached a treatment plateau" with his psychological treatment.  (*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. Nat'l Labor Relations Bd.*, 296 F.3d 384, 395 (6th Cir. 2002).

## III. DISCUSSION

**A.     Plaintiff's Motion to Remand**

Plaintiff first argues that this case should be remanded because the ALJ did not have the benefit of Dr. Pawlarczyk's report before issuing a decision.[1] A social security case can be remanded "for further administrative proceedings" where "a claimant shows that the evidence is new and material, and that there was good cause for not presenting [the evidence] in the prior

---

[1] The additional documentation that Plaintiff submitted on June 3, 2015, also includes an evaluation form completed by one of Plaintiff's treating psychologists, John F. McFadden. (*See* Doc. 14-1 at 3). While the motion and statement of errors mention Dr. McFadden's evaluation form in passing, Plaintiff argues for remand exclusively based upon Dr. Pawlarczyk's report and does not even mention Dr. McFadden's report in his reply brief. (*See* Doc. 14 at 2, 4–6; Doc. 23). Because Plaintiff raises Dr. McFadden's evaluation form in a cursory manner, the Court addresses only Dr. Pawlarczyk's report in addressing the motion for remand. *See Deloge v. Comm'r of Soc. Sec. Admin.*, 540 F. App'x 517, 519 (6th Cir. 2013) (holding that the plaintiff did "not satis[y] his burden" for remand where his "brief d[id] not discuss or cite the specific evidence" he contended was new); *Morris v. Comm'r of Soc. Sec.*, No. 1:11-CV-154, 2012 WL 4953118, at *4 (W.D. Mich. Oct. 17, 2012) ("[Plaintiff] makes no attempt to address his statutory burden [for remand] with regard to each additional item of evidence offered. Issues raised in a perfunctory manner are deemed waived.").

proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[T]he burden of showing that a remand is appropriate is on the claimant."). None of these requirements is satisfied here.

First, the evidence is not new. "For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Id.* (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Plaintiff argues that Dr. Pawlarczyk's report is new because it was not created until after the ALJ issued his decision. But when it was created is not what matters. To satisfy the "new" requirement, evidence must not have been "available to the claimant at the time of the administrative proceeding." *Id.* The Sixth Circuit's decision in *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542 (6th Cir. 2002), is instructive. There, the plaintiff sought remand to consider additional evidence of her work history. *See id.* at 549. "[E]ven though she had the more detailed history" prior to the decision to deny benefits, she chose not to submit it until later in the process. *Id.* The Sixth Circuit declined to remand the matter. "Although [the plaintiff] had not prepared this new version of her history before the first hearing," the Court explained, "all the information in it was available before the ALJ's decision. Therefore, it is not *new* information." *Id.* (emphasis added).

Asserting that Dr. Pawlarczyk's report is not new evidence, the Commissioner argues that Plaintiff could have obtained a similar report before the ALJ rendered his decision. Plaintiff's response supports the Commissioner's argument. He asserts that Dr. Pawlarczyk's report demonstrates that "*the ongoing nature* of Plaintiff's conditions *relate back* to the time of the hearing." (Doc. 14 at 3 (emphasis added); *see id.* at 2 ("Dr. Pawlarczyk . . . concluded . . . [Plaintiff] continue[d] to suffer from the same symptoms" since 2012)). In other words, Plaintiff admits that the information in Dr. Pawlarczyk's report was available before the ALJ's decision.

6

He therefore fails on the first prong of the remand standard. *See Delgado*, 30 F. App'x at 549; *see also Shull v. Astrue*, No. 09-CV-2931, 2011 WL 1357363, at *4 (N.D. Ohio Apr. 11, 2011) ("The medical records upon which Dr. Mayerson's opinion was founded, were available to Shull prior to the hearing. As Defendant points out, there is no reason that Plaintiff could not have sought Dr. Mayerson's opinion prior to the hearing.").

Second, the evidence is not material. Evidence is material if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). At the time the ALJ decided this case, the record included two psychological reports and an assessment by the state-agency consultant. (*See* Doc. 13 at Tr. 16, PAGEID #: 69). These reports noted Plaintiff's mild issues with anxiety, depression, and temper. (*See id.* at Tr. 394–95, PAGEID #: 448–49; *id.* at Tr. 368–73, PAGEID #: 421–26). They also recommended a low-stress work environment and minimal interaction with co-workers and supervisors. (*See id.* at Tr. 372–73, PAGEID #: 425–26; *id.* at Tr. 81, PAGEID #: 134). The ALJ recognized these observations and recommendations and accordingly incorporated them into his opinion. (*See, e.g.*, *id.* at Tr. 16, 20–21, PAGEID #: 69, 73–74). Dr. Pawlarczyk's report included substantially the same observations and recommendations. (*See* Doc. 14-1 at 11–12). Because Dr. Pawlarczyk's report largely accords with the prior reports, and because the ALJ accounted for the prior reports in his decision, the Court cannot conclude that there is a reasonable probability the ALJ would have reached a different conclusion with the benefit of Dr. Pawlarczyk's report. *See Shoemaker v. Astrue*, No. 1:10-CV-001, 2010 WL 5184846, at *9 (S.D. Ohio Sept. 7, 2010) ("The record also included a prior diagnosis of stenosis (Tr. 299); therefore, Dr. Bohinski's report contains no 'new' or 'material' information but is

instead cumulative."), *report and recommendation adopted sub nom. Shoemaker v. Comm'r of Soc. Sec.*, No. 1:10-CV-001-HJW, 2010 WL 5184837 (S.D. Ohio Dec. 15, 2010).

Plaintiff disagrees, asserting that the evidence is material because his mood-disorder issues and low energy levels have persisted since the ALJ reached his decision.  (*See* Doc. 14 at 2–3).  In other words, Plaintiff again contends his ailments have stayed the same since the denial of benefits.  If the ALJ previously denied benefits, additional evidence demonstrating that Plaintiff's impairments have remained the same is not likely to change his mind.  *See Shoemaker*, 2010 WL 5184846, at *9.

Third, Plaintiff fails to demonstrate good cause for not presenting Dr. Pawlarczyk's report in the prior proceeding.  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Foster*, 279 F.3d at 357.  Plaintiff contends he did not know he needed to submit Dr. Pawlarczyk's report because he thought the evidence he submitted at the time was sufficient to demonstrate his disability, and he concedes that he believed there was enough evidence in the record at the time of the hearing for the ALJ to reach a proper decision.  In other words, Plaintiff's basis for remand is that he lost.  Disagreement with the ALJ's decision, however, is not good cause for remand.  *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 485 (6th Cir. 2006) (plaintiff failed "on the 'good cause' prong" where she did not "identif[y] any obstacles to her submission of [the allegedly new] evidence"); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (good cause not met where the plaintiff's counsel argued she was not sufficiently acquainted with claimant prior to the hearing to realize his need for mental evaluation); *Morris*, 2012 WL 4953118, at *5 ("Contrary to plaintiff's assumption, 'good cause' is not established solely because evidence was not generated until after the ALJ's decision."); *see*

*also Foster*, 279 F.3d at 355 ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.").

**B.     Plaintiff's Credibility**

An ALJ's credibility determination is accorded great weight and deference. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained, *see Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987), and must enjoy substantial support in the record, *see Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). Here, the ALJ found Plaintiff "to be only partially credible" regarding "the intensity, persistence and limiting effects of [his] impairment-related symptoms." (Doc. 13 at Tr. 17, PAGEID #: 70). Plaintiff contends "that the ALJ improperly discounted [his] testimony regarding his psychological conditions." (Doc. 14 at 4).

Contrary to Plaintiff's argument, the ALJ supported his credibility determination with several examples of Plaintiff's inconsistent statements. The ALJ cited, for example, Plaintiff's inconsistent statements regarding his alcohol use. (*See* Doc. 13 at Tr. 209, PAGEID #: 262 (Plaintiff denying alcohol use in 2009); *id.* at Tr. 321, PAGEID #: 374 (Plaintiff denying alcohol use in July of 2011); *id.* at Tr. 368, PAGEID #: 421 (Plaintiff telling the psychological examiner, on June 28, 2011, both that he hasn't had alcohol "in about 5 years" but that he had "one DUI" the previous year); *id.* at Tr. 393, PAGEID #: 446 (Plaintiff telling a different psychological examiner, on June 29, 2011, that he had not used alcohol in the past five years but did have two DUIs)).

As the ALJ also explained, Plaintiff gave inconsistent statements regarding his smoking habits, which is especially relevant given that Plaintiff sought workers' compensation benefits

9

"in part for a debilitating respiratory condition." (*Id.* at Tr. 18, PAGEID #: 71; *see id.* at Tr. 46, PAGEID #: 99 (Plaintiff testifying at the administrative hearing that had not smoked since around June of 2009); *id.* at Tr. 209, PAGEID #: 262 (Plaintiff telling his doctor in September of 2009 that he was down to "less than a half a pack" per day); *id.* at Tr. 283, PAGEID #: 336 (doctor's notes from December of 2009 stating that Plaintiff's "Carbon Monoxide level" indicated "he had been smoking more than what he was claiming at present"); *see also id.* at Tr. 208, PAGEID #: 261 (Plaintiff's doctor "[a]dvised him to quit smoking completely" in October of 2009); *id.* at Tr. 283, PAGEID #: 336 (Plaintiff's doctor "very strongly advised him to quit smoking" in December of 2009)); *Rottinghouse v. Comm'r of Soc. Sec.*, No. 1:11-CV-882, 2013 WL 618625, at *12 (S.D. Ohio Feb. 19, 2013), *report and recommendation adopted*, No. 1:11-CV-00882, 2013 WL 1435227 (S.D. Ohio Apr. 9, 2013) ("[T]he ALJ determined that plaintiff's credibility was weakened by record evidence demonstrating that she refused treatment for her impairments and was noncompliant with her medical providers' instructions.").

The ALJ also properly cited—and the record supports—Plaintiff's "sporadic, relatively poor overall work record." (*See, e.g.*, Doc. 13 at Tr. 143–44, PAGEID #: 196–97 (Plaintiff reporting he earned less than $4,000 in 16 of 25 years since 1988)); *see also Chambers v. Comm'r of Soc. Sec.*, No. 1:11-CV-453, 2012 WL 3848675, at *14 (S.D. Ohio Sept. 5, 2012), *report and recommendation adopted*, No. 1:11CV453, 2012 WL 4481222 (S.D. Ohio Sept. 27, 2012) (upholding the ALJ's credibility determination based in part on the ALJ's finding that sporadic work history indicated claimant was not strongly motivated to engage in meaningful productive activity).

Finally, contrary to Plaintiff's argument, substantial evidence supports the ALJ's conclusion that the psychological reports did "not indicate [Plaintiff] to be precluded from

performing all forms of work activity." (Doc. 13 at Tr. 21, PAGEID #: 74; *see id.* at Tr. 393, PAGEID #: 446 (noting Plaintiff "appear[ed] to have mildly restricted cognitive capacity and concentration," as well as "fair" "[i]nsight and judgment"); *id.* at Tr. 371–73, PAGEID #: 424–27 ("The claimant's reasoning and judgment capacities appear to fall at age appropriate levels. . . . [H]e would be expected to understand, remember and carry out instructions in the work setting consistent with individuals with average intellectual capabilities. . . . [C]laimant has the abilities to conform to social expectations in the work setting . . . .")). Plaintiff counters, citing Dr. Pawlarczyk's report to support his argument that the ALJ "largely ignored" Plaintiff's symptoms. (Doc. 14 at 5). The Court is not persuaded. As explained, the evidence from Dr. Pawlarczyk's report is not new or material at this stage. Even if it were new or material to this appeal, Dr. Pawlarczyk's report is consistent with the psychological evidence the ALJ considered when he made his decision. (*See, e.g.*, Doc. 13 at Tr. 372–73, PAGEID #: 425–26; *id.* at Tr. 81, PAGEID #: 134; Doc. 14-1 at 11–13).

In short, the evidence the ALJ relied on to support his decision to limit Plaintiff's credibility qualifies as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241 (quotation omitted).

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's motion to remand be **DENIED**, his statement of errors be **OVERRULED**, and judgment be entered in favor of the Commissioner.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen

(14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A district judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).  Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.

Date: July 7, 2016                                                  /s/ Kimberly A. Jolson
                                                                          KIMBERLY A. JOLSON
                                                                          UNITED STATES MAGISTRATE JUDGE